UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SCHANKER & HOCHBERG, P.C.,
STEVEN SCHANKER, ESQ., and
R. MARK HOCHBERG, ESQ.,

                           Plaintiffs,          **MEMORANDUM AND ORDER**

 - against -                        2:20-cv-5361 (DRH)(ARL)

BERKLEY ASSURANCE COMPANY,

                        Defendant.
-------------------------------------------------------------X

**APPEARANCES**

**HAMBURGER, MAXSON, YAFFE & McNALLY, LLP**
Attorneys for Plaintiffs
225 Broadhollow Road, Suite 301E
Melville, NY 11747
By:    Richard Hamburger, Esq.
        David N. Yaffe, Esq.

**COUGHLIN DUFFY LLP**
Attorneys for Defendant
Wall Street Plaza
88 Pine Street, 28th Floor
New York, NY 10005
By:    Gabriel E. Darwick, Esq.

**HURLEY, Senior District Judge:**

### INTRODUCTION

Plaintiff Schanker & Hochberg, P.C., Steven Schanker, Esq., and R. Mark

Hochberg, Esq. (collectively "S&H") brought this insurance coverage action against

Defendant Berkley Assurance Company ("Berkley") seeking a declaratory judgment

that Berkley must defend and indemnify S&H in an underlying state court litigation,

a mandatory injunction requiring Berkley to do so, reimbursement of their defense

costs and fees to date in the underlying action, and an award of costs and fees incurred in pursuing this action.  Presently before the Court are (i) Berkley's motion to dismiss S&H's fourth cause of action for attorney's fees and costs pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and (ii) S&H's motion for partial summary judgment as to Berkley's duty to defend pursuant to Rule 56.  For the reasons below, Berkley's motion is granted in part and denied in part, and S&H's motion is granted in part and deferred in part.

## BACKGROUND

The following facts are taken from the Complaint, the documents incorporated by reference, and the undisputed facts in the parties' Rule 56.1 statements.  [DEs 1, 15-1, 15-16].

Schanker & Hochberg, P.C., is a professional corporation incorporated in New York State with a New York principal place of business.  (Compl. ¶ 2 [DE 1]).  Steven Schanker, Esq. and R. Mark Hochberg, Esq. are New York citizens practicing law at Schanker & Hochberg, P.C.  (*Id.* ¶¶ 3–4).  Berkley is an insurance corporation incorporated in Iowa with an Arizona principal place of business.  (*Id.* ¶ 5).

Berkley issued a lawyers professional liability insurance policy to S&H for the policy period June 29, 2019 to June 29, 2020.  (*Id.* ¶ 12; *see* Policy No. VUMA0177701 (the "Policy"), Ex. A [DE 14-3] to Declaration of Gabriel Darwick ("Darwick Decl.") [DE 14-2]).  Under the Policy, Berkley provides coverage for

> those sums [S&H] becomes legally obligated to pay as 'damages' because of an act, error or omission arising out of [S&H's] 'legal services' rendered or that should have been rendered.  [Berkley] will have the right and duty to defend [S&H] against a 'claim' seeking those damages.

> However, [Berkley] will have no duty to defend [S&H] against any 'claim' seeking 'damages' for 'legal services' to which this insurance does not apply.

(Policy § I.1.a). "Damages" are "judgments, awards and settlements an insured is legally obligated to pay as a result of a 'claim.'" (*Id.* § VII.3). A "claim" includes civil proceedings demanding "monetary 'damages' arising out of" S&H's "legal service[s]"—but not "demand[s] for equitable or non-pecuniary relief"—as well as any "related claims." (*Id.* § VII.2, .11). "Legal services" are the "usual and customary services of a licensed lawyer in good standing." (*Id.* § VII.5). The Policy also has exclusions. In particular, the Policy does not apply to any claim

> j.  Based on or directly or indirectly arising out of or resulting from:
>
> > (1)  Any act committed with knowledge of its wrongful nature or with intent to cause damage;
> >
> > . . . ; or
> >
> > (3)  Any criminal, fraudulent, or dishonest act.
> >
> > However, [Berkley] shall defend such allegations against any insured if it involves a 'claim' otherwise covered under this Policy until final adjudication.
>
> l.  For payment of any fine, sanction or penalty of any nature against any insured[.]

(Policy § I.2.j, .*l*).

On September 23, 2019, a second amended complaint in a New York State Supreme Court, New York County action named S&H as defendants, bringing four causes of action against S&H for violations of the New York False Claims Act ("NYFCA"). (Compl. ¶ 30; Second Amended Complaint ("*Merns* Complaint" or "*Merns* Compl.") ¶¶ 257–62, 263–67, 268–72, 283–87, *Jillian Merns* et. al. *v. Estate of Sy Syms* et al., Index No. 14/100299 (N.Y. Sup. Ct., N.Y. Cnty.) (the "*Merns* Action"), Ex.

D [DE 14-18] to Declaration of David N. Yaffe ("Yaffe Decl.") [DE 14-14]).  The *Merns* Complaint alleges S&H "knowingly aided and abetted" certain schemes to defraud New York State via the "[i] tax returns and records of . . . the Estate [of Sy Syms] and Marcy Syms, [ii] filings with the Securities and Exchange Commission ("SEC"), [iii] records and tax returns of [the] Syms Corporation, and [iv] records of the Sy Syms Foundation."    (Compl. ¶¶ 22–29; *Merns* Compl. ¶¶ 2–4).    Specifically, S&H "supervised" transactions, "consulted on SEC reporting requirements," and "prepared" tax returns. (*Merns* Comp. ¶ 5; *see also id.* ¶¶ 7, 41, 51–53, 173–75). S&H allegedly "billed a quarter of a million dollars for its services." (*Id.* ¶ 5). The *Merns* plaintiffs seek the NYFCA statutory award of civil penalties and treble damages. (*Id.* Wherefore Clauses).

S&H tendered its defense in the *Merns* Action to Berkley on October 24, 2019. (Compl. ¶ 32; Ex. F [DE 15-7] to Yaffe Decl.).  Berkley denied coverage on November 18, 2019.  (Compl. ¶ 33; Ex. E [DE 14-7] to Darwick Decl.).  Following correspondence in which the parties refused to change their positions, S&H commenced this action on November 22, 2020.  S&H seeks: (1) a declaration that Berkley must defend and indemnify S&H in the *Merns* Action, (2) a mandatory injunction requiring Berkley to defend and indemnify S&H in the *Merns* Action, (3) damages for S&H's defense costs in the *Merns* Action, and (4) attorney's fees in this action.

On December 18, 2020, Berkley requested a premotion conference regarding leave to move to dismiss.  [DE 9]  In response, and although Berkley had not yet answered the Complaint, S&H requested a premotion conference regarding leave to

move for summary judgment.  [DE 10].  In granting both parties leave to file their motions, the Court noted that Rule 56(b) permits "a party" to move for summary judgment "at any time until 30 days after the close of discovery" and the absence of an overlap between the issues in the proposed motions.  (Order dated Jan. 8, 2022). On April 23, 2021, both motions were submitted.

## DISCUSSION

The Court begins with (I) Berkley's motion to dismiss before turning to (II) S&H's motion for partial summary judgment on the duty to defend.

## I.    Berkley's Motion to Dismiss

To decide Berkley's motion to dismiss, the Court proceeds in the following order: (A) the legal standard on a Rule 12(b)(6) motion and (B) whether S&H's fourth cause of action for attorney's fees and costs should be dismissed.

### A.    Legal Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted).  The plausibility standard is guided by two principles.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)); *accord Harris v. Mills*, 572 F.3d 66, 71–72 (2d Cir. 2009).

First, the principle that a court must accept all allegations as true is inapplicable to legal conclusions. Thus, "threadbare recitals of the elements of a cause of action supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Although "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679. A plaintiff must provide facts sufficient to allow each named defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery. *See Twombly*, 550 U.S. at 555.

Second, only complaints that state a "plausible claim for relief" can survive a motion to dismiss. *Iqbal,* 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but asks for more than a sheer possibility that defendant acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line' between possibility and plausibility of 'entitlement to relief.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007). Determining whether a complaint plausibly states a claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679; *accord Harris*, 572 F.3d at 72.

## B.    Berkley's Motion is Granted in Part and Denied in Part

Berkley moves to dismiss S&H's fourth cause of action for attorney's fees and costs—arising from an alleged breach of the implied covenant of good faith and fair

dealing—as duplicative of the third cause of action—breach of contract. *Compare* Compl. ¶¶ 47–51 (breach of contract), *with id.* ¶¶ 52–61 (implied covenant). Berkley contends the two arise from the same set of facts, namely Berkley's alleged refusal to honor its obligations under the Policy. Berkley MTD Opening at 11 [DE 14-1]. In S&H's view, Berkley breached the Policy by forcing S&H to "find and retain counsel" for and to "shoulder the entire significant financial burden" of its defense in the *Merns* Action. Compl. ¶ 48. Berkley breached the implied covenant claim, continues S&H, by "deliberately," "recklessly," and "unreasonably" refusing to defend S&H and, as a result, requiring S&H to incur costs, expenses and attorney's fees in bringing this coverage action. *Id.* ¶¶ 54–55, 59.

"Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013) (quoting *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002)). The two breaches, however, "are not necessarily duplicative" if they arise from different facts. *D.K. Prop., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 168 A.D.3d 505, 507 (N.Y. App. Div., 1st Dep't 2019) (citing *Bi–Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.,* 10 N.Y.3d 187 (N.Y. 2008)); *see Harris*, 310 F.3d at 81.

The trial and appellate courts in *D.K. Property* faced the issue before this Court and determined the claims arose from different facts. They held the claims were not duplicative:

> In the first cause of action, plaintiff alleges that [its insurer] has
> breached its obligations under the policy by refusing to acknowledge
> coverage for plaintiff's property loss, and seeks the coverage it is owed
> under the policy.  This is fundamentally different from the second cause
> of action, which alleges that [the insurer] has breached the implied
> covenant of good faith and fair dealing by . . . forcing plaintiff to
> bring . . . the instant lawsuit against [the insurer] for a determination
> as to coverage under the policy.  The relief sought in the second cause of
> action is not for coverage under the Policy, but for plaintiff to be made
> whole for all of the legal and engineering fees and other costs that it has
> allegedly incurred as a result of [its insurer's] alleged bad faith conduct
> and two-year delay in making a determination.

*D.K. Prop., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 59 Misc. 3d 714, 721 (N.Y. Sup. Ct., N.Y. Cnty. 2018), *rev'd on other grounds* 168 A.D.3d 505 (N.Y. App. Div., 1st Dep't 2019).  The New York Appellate Division, First Department, despite reversing on other grounds, observed nonetheless that the trial court was correct in determining the claims were not duplicative: "The first and second causes of action plead different conduct by defendant."  168 A.D.3d at 507 (citing *Bi–Economy Mkt., Inc.*, 10 N.Y.3d 187).

But the situation here is not the same as in *D.K. Property*.  Like *D.K. Property*, S&H's breach of contract claim concerns the coverage it is owed in the *Merns* Action and S&H's implied covenant claim concerns its efforts in bringing the instant action.  Unlike *D.K. Property*, however, S&H uses identical descriptions of the conduct constituting both breaches: "Defendant's refusal to honor its obligations to Plaintiffs under the Policy."  *Compare id.* ¶ 53, *with id.* ¶ 48 (identical but adding "and duties" after "obligations").  Even though S&H amplifies the implied covenant claim by calling the breach "deliberate[]" and reckless[]," the two claims may still be duplicative.  *See N.Y.U. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 319–20 (N.Y. 1995).

With these principles in mind, the Court holds that S&H's third and fourth causes of action duplicate each other. *See MD3 Holdings, LLC v. Buerkle*, 174 A.D.3d 1309, 1311 (N.Y. App. Div., 4th Dep't 2019) (implied covenant claim "premised on the same conduct as the breach of contract claim and [] intrinsically tied to the damages allegedly resulting from a breach of the contract" is duplicative); *Sikarevich Fam. L.P. v. Nationwide Mut. Ins. Co.*, 30 F. Supp. 3d 166, 171–72 (E.D.N.Y. 2014) (insurer's "decision to deny plaintiff coverage is the crux of plaintiff's [implied covenant] allegations," meaning "the same facts, regarding defendant's compliance with its contractual obligations, give rise to both claims," even though insurer allegedly "exhibited deliberate and reckless indifference"); *A.J. Sheepskin Leather & Outerwear, Inc. v. USF Ins. Co.*, 2004 WL 503727, at *3 (S.D.N.Y. Mar. 12, 2004) (implied covenant allegations are duplicative because they "mirror" those for breach of insurance contract; "both rely solely on the Plaintiff's conclusory allegations that the Defendant was obligated to indemnify the Plaintiff for its property losses and refused to do so").

Even so, the issue is academic.  Were the implied covenant cause of action improper as its own separate cause of action, an insured still may recover consequential damages—*e.g.*, legal fees in a coverage action—from insurer's breach of contract in bad faith—*i.e.*, deliberately and recklessly.  *D.K. Prop., Inc.*, 59 Misc. 3d at 719–20 (citing *Acquista v. New York Life Ins. Co.*, 285 A.D.2d 73, 82 (N.Y. App. Div., 1st Dep't 2001)); *Sikarevich Fam. L.P.*, 30 F. Supp. 3d at 172.  The relief sought may still be available regardless of any duplication.

When faced with this situation, some courts have dismissed the implied covenant claim "without prejudice to a future argument that [the insured] is entitled to recover consequential damages caused by [the insurer's] alleged bad faith." *See Great Lakes Reinsurance (UK) SE v. Herzig*, 413 F. Supp. 3d 177, 185 n.1 (S.D.N.Y. 2019). Others have "decline[d] to dismiss the [implied covenant] cause of action[] but dismisse[d] [any] claim for consequential damages in the [breach of contract] cause of action." *D.K. Prop., Inc.*, 59 Misc. 3d at 720. If the Court dismisses the implied covenant claim, S&H would need to amend its Complaint to reflect the Court's decision. Judicial efficiency points the Court to the alternative solution: denying Berkley's motion to dismiss but barring S&H's recovery of consequential damages in the breach of contract cause of action.[1] The surviving fourth cause of action, being duplicative, retains the availability of such consequential damages.

Accordingly, Berkley's motion to dismiss is granted in part and denied in part. It is granted insofar as that S&H may not recover consequential damages on its third cause of action. It is denied in that S&H's fourth cause of action survives.

---

[1]     Judicial efficiency likewise leads the Court not to dismiss *sua sponte* S&H's causes of action for declaratory judgment and injunctive relief. Berkley MTD Opening at 2 n.1; S&H MTD Opp. at 2 n.2 [DE 14-19]; Berkley MTD Reply at 1 n.1 [DE 14-22]. "Declaratory judgments and injunctions are remedies, not causes of action." *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406–07 (S.D.N.Y. 2010). The *Chiste* Court dismissed such causes of action but "deemed [the remedies] added to [plaintiff's] ad damnum clause." *Id.* Here, S&H's ad damnum clause already lists such relief and does not tie them to any particular cause of action. Were the first and second causes of action dismissed, then, any amended complaint would simply delete the cause of action headers and merge their factual allegations with those of the breach of contract claim. Because the Complaint already gives Berkley sufficient notice as to the nature of S&H's claims and remedies, the Court declines to dismiss *sua sponte* S&H's first and second "causes of action."

## II.     S&H's Motion for Summary Judgment

S&H moves for partial summary judgment on the issue of Berkley's duty to defend in the *Merns* Action.  The Court addresses the issues in the following order: (A) the prematurity of S&H's motion; (B) the legal standard on a summary judgment motion, (C) the application and principles of New York insurance law, (D) the merits of S&H's motion, and (E) the scope of the Court's decision.

### A.     Prematurity

S&H moved for summary judgment before Berkley answered the Complaint. Berkley calls the motion premature because its answer "may raise . . . affirmative defenses concerning compliance with all policy terms, provisions, conditions and/or other exclusions," the merits of which require discovery.  Berkley SJ Opp. at 4 & n.1 [DE 15-17].

A party may move for summary judgment "at any time until 30 days after the close of all discovery," including before a defendant answers the complaint.  Fed. R. Civ. P. 56(b).  A nonmovant, however, can respond via "affidavit or declaration, for specified reasons, [that] it cannot present facts essential to justify its opposition."  *Id.* 56(d).  "The grant of relief pursuant to Rule 56(d) is within the discretion of the district court."  *Walden v. Sanitation Salvage Corp.*, 2015 WL 1433353, at *2 (S.D.N.Y. Mar. 30, 2015) (citing *Cont'l Cas. Co. v. Marshall Granger & Co., LLP*, 921 F. Supp. 2d 111, 126–27 (S.D.N.Y. 2013)).

Despite quoting Rule 56(d), Berkley fails to submit an "affidavit or declaration" specifying any reasons for delaying a summary judgment decision.  *Id.*  "The failure

to file an affidavit under Rule 56(d) is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." *Kazolias v. IBEWLU 363*, 806 F.3d 45, 54 (2d Cir. 2015) (alterations and internal quotation marks omitted) (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994)).

Relatedly, and even though it has not cross-moved for summary judgment in its favor, Berkley asks the Court to "award summary judgment to Berkley declaring it has no duty to defend" S&H. Berkley SJ Opp. at 10. True, "[d]istrict courts are widely acknowledged to possess the power to enter summary judgment *sua sponte*." *First Fin. Ins. Co. v. Allstate Interior Demolition Corp.*, 193 F.3d 109, 114–15 (2d Cir. 1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986)). Pursuant to the analysis below, such relief is unwarranted. Berkley's request, however, implicitly suggests that S&H's motion is not entirely premature – in other words, the Court may properly grant partial summary judgment at the present time, before an answer and without discovery.

Accordingly, S&H's summary judgment motion is not premature.

## B. Summary Judgment Legal Standard

Summary judgment, pursuant to Rule 56, is appropriate only where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant governing law in each case determines which facts are material; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 248 (1986).  When making this determination, a court must view all facts "in the light most favorable" to the non-movant, *Tolan v. Cotton*, 572 U.S. 650, 656–57 (2014), and "resolve all ambiguities and draw all permissible factual inferences in favor of the [non-movant]," *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (quoting *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).  Thus, "[s]ummary judgment is appropriate [only] where the record taken as a whole could not lead a rational trier of fact to find for the [non-movant]."  *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)) (internal quotation marks omitted).

To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts demonstrating that there is a genuine dispute of material fact to be tried.  *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009).  The non-movant must present more than a "scintilla of evidence," *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012) (quoting *Anderson*, 477 U.S. at 252), or "some metaphysical doubt as to the material facts," *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quoting *Matsushita*, 475 U.S. at 586–87), and "may not rely on conclusory allegations or unsubstantiated speculation," *id.* (quoting *FDIC v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010)).

The district court considering a summary judgment motion must also be "mindful . . . of the underlying standards and burdens of proof," *Pickett v. RTS Helicopter*, 128 F.3d 925, 928 (5th Cir. 1997) (citing *Anderson*, 477 U.S. at 252), because the "evidentiary burdens that the respective parties will bear at trial guide

district courts in their determination[s] of summary judgment motions," *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988). "[W]here the [non-movant] will bear the burden of proof on an issue at trial, the moving party may satisfy its burden by pointing to an absence of evidence to support an essential element of the [non-movant's] case." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) (quoting *Brady*, 863 F.2d at 210–11) (internal quotation marks omitted). Where a movant without the underlying burden of proof offers evidence that the non-movant has failed to establish his claim, the burden shifts to the non-movant to offer "persuasive evidence that his claim is not 'implausible.'" *Brady*, 863 F.2d at 211 (citing *Matsushita*, 475 U.S. at 587). "[A] complete failure of proof concerning an essential element of the [non-movant's] case necessarily renders all other facts immaterial." *Crawford*, 758 F.3d at 486 (quoting *Celotex Corp.*, 477 U.S. at 323 (1986).

## C.    Choice of Law and Principles of Analyzing Insurance Policies

The Court's subject-matter jurisdiction arises from the parties' diversity of citizenship. The law of New York, the forum state, governs the choice of law analysis. *AEI Life LLC v. Lincoln Benefit Co.*, 892 F.3d 126, 132 (2d Cir. 2018). Both parties apply the New York's substantive law in their briefing and, accordingly, "their consent concludes the choice of law inquiry. *Texaco A/S (Denmark) v. Com. Ins. Co. of Newark, NJ*, 160 F.3d 124, 128 (2d Cir. 1998) (quoting *Am. Fuel Corp. v. Utah Energy Dev. Co.*, 122 F.3d 130, 134 (2d Cir. 1997)). New York law applies.

Under New York law, the Court's "role in interpreting a contract is to ascertain the intention of the parties at the time they entered into the contract." *Evans v. Famous Music Corp.*, 1 N.Y.3d 452, 458 (N.Y. 2004). To do so, courts apply the ordinary "principles of contract interpretation" to insurance agreements, "giv[ing] full meaning and effect" to all contractual provisions and construing unambiguous provisions in line with "their plain and ordinary meaning." *Burlington Ins. Co. v. NYC Transit Auth.*, 29 N.Y.3d 313, 321 (N.Y. 2017) (internal quotation marks omitted); *White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 267 (N.Y. 2007). "Well recognized is the general rule that ambiguities in an insurance policy are to be construed against the insurer . . . ." *Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 353 (N.Y. 1978). "Courts defining insurance policy terms should keep in mind that under New York law the 'insurance policy should be read in light of common speech and the reasonable expectations of a businessperson.'" *David Lerner Assocs., Inc. v. Philadelphia Indem. Ins. Co.*, 542 Fed. App'x 89, 90 (2d Cir. 2013) (quoting *Parks Real Estate Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 42 (2d Cir. 2006)).

### D.     Berkley's Duty to Defend S&H in the *Merns* Action

"The insured has the initial burden of . . . establish[ing] coverage where it would not otherwise exist. Once coverage is established, the insurer bears the burden of proving that an exclusion applies." *Consol. Edison Co. of New York v. Allstate Ins. Co.*, 98 N.Y.2d 208, 220 (N.Y. 2002) (internal citation omitted).

### 1.    Coverage

S&H, as Berkley's insured, bears the burden to establish coverage. "Coverage," as defined by the Policy, refers to Berkley's duty to defend and duty to indemnify:

> [Berkley] will pay . . . those sums any insured becomes legally obligated to pay as "damages" because of an act, error or omission arising out of [S&H's] "legal services" rendered or that should have been rendered. [Berkley] will have the right and duty to defend any insured against a "claim" seeking those "damages."  However, we will have no duty to defend any insured against any "claim" seeking "damages" for "legal services" to which this insurance does not apply.

Policy § I.1.a ("Coverage").  Berkley may refuse to provide a defense "only if it could be concluded as a matter of law that there is no possible factual or legal basis on which [Berkley] might eventually be held to be obligated to indemnify [S&H] under any provision of the insurance policy." *Servidone Constr. Corp. v. Sec. Ins. Co. of Hartford*, 64 N.Y.2d 419, 424 (N.Y. 1985).  An underlying complaint is "the significant and usual touchstone for determining" this duty. *Fitzpatrick v. Am. Honda Motor Co.*, 78 N.Y.2d 61, 65–66 (N.Y. 1991).   Here, the coverage inquiry boils down to whether the acts alleged in the *Merns* Complaint arose out of S&H's "legal services." The Policy defines "legal services" as the "usual and customary services of a licensed lawyer in good standing."  Policy § VII.5.

S&H argues that licensed attorneys regularly perform the acts alleged in the *Merns* Complaint: "supervis[ion of]" an estate transaction, "consult[ation] on SEC reporting requirements," and preparation of tax returns.  S&H SJ Opening at 8–10 [DE 15-13]; *see, e.g.*, *Merns* Compl. ¶¶ 5, 56, 267.  It is indisputable that licensed attorneys usually and customarily perform these services.  *See Colton v. United States*, 306 F.2d 633, 637 (2d Cir. 1962) ("There can, of course, be no question that

the giving of tax advice and the preparation of tax returns[,] which unquestionably constituted a very substantial part of the legal services rendered . . . [,] are basically matters sufficiently within the professional competence of an attorney . . . ."); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 319 F.R.D. 100, 106 (S.D.N.Y. 2017) (observing that "estate planning-related communications" between a law firm and client are "unquestionably privileged," *i.e.* "made for the purpose of obtaining or providing legal advice"); *Stenovich v. Wachtell, Lipton, Rosen & Katz*, 195 Misc. 2d 99, 107 (N.Y. Sup. Ct., N.Y. Cnty. 2003) (finding "no reason to believe that Wachtell Lipton was hired for any reason other than" to provide "legal advice" concerning, *inter alia*, "securities and related filings including public statements" and holding that its documents "are primarily of a legal character").

Berkley stresses the allegedly fraudulent manner in which S&H performed such acts. Because "the acts of fraud are [not] the 'usual and customary services of a licensed lawyer in good standing,'" Berkley contends S&H did not provide "legal services" in so acting. Berkley SJ Opp. at 4–10. Specifically, Berkley draws a distinction between coverage for damages arising from, on the one hand, "the professional services (legal services) underlying [] false claims," and, on the other hand, "the presentation of false claims" to the Government – the latter for which the NYFCA imposes liability. Berkley SJ Opp. at 4–10.

Berkley supports its position by devoting an entire section to an observation made by an Eastern District of Louisiana court:

> Every federal circuit faced with the issue has held that coverage under a professional liability insurance policy is not triggered by claims asserted under the False Claims Act because such claims are not predicated on the insured's professional services that are covered by such a policy.

*Iberiabank Corp. v. Illinois Union Ins. Co.* 2019 WL 585288, at *5–6 (E.D. La. Feb. 13, 2019), *aff'd*, 953 F.3d 339 (5th Cir. 2020) (citing *Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Ctr., Inc.* ("*Momence*"), 566 F.3d 689, 695 (7th Cir. 2009); *Zurich Am. Ins. Co. v. O'Hara Reg'l Ctr. for Rehab.* ("*Zurich*"), 529 F.3d 916, 921–23 (10th Cir. 2008); *Horizon West, Inc. v. St. Paul Fire & Marine Ins. Co.* ("*Horizon West*"), 45 Fed. App'x 752, 753–54 (9th Cir. 2002); *Jenkins v. St. Paul Fire & Marine Ins. Co.*, 8 Fed. App'x 573, 574 (8th Cir. 2001); *M/G Transport Servs., Inc. v. Water Quality Ins. Syndicate* ("*M/G Transp.*"), 234 F.3d 974, 978 (6th Cir. 2000)). But while this statement reads broadly, the next sentence—the last half of which Berkley overlooks—narrows the "issue" referenced by that court:

> Central to each of these cases is the understanding that the FCA imposes liability on persons or corporations who knowingly *submit* false claims to the government *in return for a government-provided benefit –* whether reimbursement or something else.

*Id.* (internal quotation marks omitted) (emphasis added); *see* Berkley SJ Opp. at 5 (omitting the emphasized text).  In *Iberiabank*, and each of its cited circuit cases, the insured submitted its own documents to obtain a government-provided benefit for itself.  2019 WL 585288 at *5–6 (bank submitted certifications to participate in Federal Housing Administration's "Direct Endorsement program," which "insures

approved lenders against losses on mortgage loans made to buyers of single-family homes"); *see also Momence*, 566 F.3d at 691, 694–95 (nursing center submitted cost reports to obtain reimbursement from Medicare); *Zurich*, 529 F.3d at 921–23 (nursing center submitted invoices to obtain reimbursement from Medicare); *Horizon West*, 45 Fed. App'x at 753–54 (nursing homes submitted bills and certifications "to maintain eligibility for Medicare and Medicaid payment"); *Jenkins*, 8 Fed. App'x at 574 (doctor submitted claims for reimbursement from Healthcare Finance Administration); *M/G Transp.*, 234 F.3d at 975–76, 978 (coal transporter's records hid "violations of the Clean Water Act so that it could obtain payment from the United States" and could "conceal, avoid, or decrease an obligation to pay money to the United States for fines or clean-up costs").

By contrast, the *Merns* Complaint alleges S&H assisted the Estate of Sy Syms, Marcy Syms, the Syms Corporation, and the Sy Syms Foundation's documents so those entities and individual could obtain a government-provided benefit. *E.g.*, *Merns* Compl. ¶ 2. Stated otherwise, S&H worked on *its clients'* documents to obtain a government-provided benefit for *its clients*. S&H billed its clients (the *Merns* co-defendants) for these services; it did not seek government reimbursement. *Merns* Compl. ¶ 41 (citing Ex. E to *Merns* Compl.). The *Merns* Complaint equivocates on whether S&H in fact "submitted" any document to the government. While some allegations contend "[d]efendants filed," *e.g.*, *Merns* Compl. ¶ 6, others identify specific defendants, *e.g.*, *id.* ¶ 7 (Marcy Syms). None specifically identify S&H.

The *Iberiabank* Court differentiated the "conduct that lay at the heart" of the False Claims Act allegations from the insured's "core lines of business." 2019 WL 585288, at *7–8. For mortgagees, government certifications as to loan underwriting procedures were ancillary to underwriting loans to clients, *id.*; for healthcare providers, "the bill is [a concomitant] effect of the service provided[,] not part of the service itself," *Horizon West*, 45 Fed. App'x at 754 (internal quotation marks omitted); and for a coal transporter, record-keeping allegations expressly disconnected from any Clean Water Act liability[2] were not environmental pollution allegations, *M/G Transp.*, 234 F.3d at 978. Essentially, each False Claims Act action sprang from conduct collateral to the professional services each insured provided. Yet the *Merns* Complaint springs from conduct ("supervis[ing]" transactions, "consult[ing] on SEC reporting requirements," and "prepar[ing]" tax returns) inseverable from the professional services a law firm offers. Hence the *Merns* Complaint limiting S&H's involvement to "knowingly aid[ing] and abet[ting]" false submissions. *Merns* Compl. ¶ 52 (alleging one estate transaction was reported to the SEC "*in consultation with*" S&H (emphasis in original)).

Berkley posits that finding coverage in the first instance here is contrary to the terms of the Policy. Not so – rather, it retains meaning otherwise lost. If allegedly fraudulent actions are not covered because they are not "legal services," then Exclusion j.(3) contains meaningless surplusage. *See* Policy § I.2.j.(3). There is no

---

[2]     The *M/G Transp.* plaintiff "expressly reserved potential Clean Water Act liability for the United States." 234 F.3d at 978

need to exclude "fraudulent[] or dishonest" acts if "no coverage [over them] existed in the first instance." *See Barbulescu v. Cara*, 191 A.D.2d 407, 408 (N.Y. App. Div., 2d Dep't 1993); *McMahon v. Bos. Old Colony Ins. Co.*, 67 A.D.2d 757, 758 (N.Y. App. Div., 3d Dep't 1979) ("[B]efore the need for an exclusion arises, there must first be coverage within the defined scope of the policy.").

Nor would a finding of coverage here, if made, signify that "the acts of fraud [may be] the 'usual and customary services of a licensed lawyer in good standing.'" Berkley SJ Opp. at 8–9. By that logic, so would a finding of coverage for legal malpractice. After all, lawyers in good standing do not usually and customarily engage in legal malpractice. But Berkley admits policies like its own *do* cover claims of legal malpractice. *See* Berkley SJ Opp. at 8–9. S&H's actions as fraudulent or malpractice color the manner in which they were performed. That gloss bears not on whether the actions themselves—*e.g.*, consulting on SEC reporting requirements—constitute legal services.

The Policy extends coverage to S&H in the *Merns* Action unless an exclusion dictates otherwise.

### 2. Exclusions

"Before an insurance company is permitted to avoid policy coverage, it must satisfy the burden which it bears of establishing that the exclusions or exemptions apply in the particular case, and that they are subject to no other reasonable interpretation." *Dean v. Tower Ins. Co. of New York*, 19 N.Y.3d 704, 708 (N.Y. 2012) (alterations omitted) (quoting *Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 311

(N.Y. 1984)).   Berkley thus bears the burden of demonstrating that an exclusion absolves it from defending S&H in the *Merns* Action.   Berkley points to three exclusions: those involving any claim

> j.   Based on or directly or indirectly arising out of or resulting from:
>
>> (1)   Any act committed with knowledge of its wrongful nature or with intent to cause damage;
>>
>> . . . ; or
>>
>> (3)   Any criminal, fraudulent, or dishonest act.
>>
>> However, [Berkley] shall defend such allegations against any insured if it involves a 'claim' otherwise covered under this Policy until final adjudication.
>
> l.   For payment of any fine, sanction or penalty of any nature against any insured;

Policy § I.2.   Proceeding in reverse order, the Court addresses Exclusion *l* first before turning to those in j.(1) and j.(3).

### a.   Exclusion *l*: Payment of Any Fine, Sanction, or Penalty

Defendants liable for an NYFCA violation must pay the government "a civil penalty" between $6,000 and $12,000 "plus three times the amount of all damages, including consequential damages," it sustained.   N.Y. State Fin. Law § 189(1).   The statute "evinces a broad[] punitive goal of deterring fraudulent conduct against" New York.   Berkley SJ Opp. at 10–12 (internal quotation marks omitted) (quoting *State ex rel. Grupp v. DHL Exp. (USA), Inc.*, 19 N.Y.3d 278, 287 (N.Y. 2012)).   Its attendant treble damages language, in Berkley's view, "do[es] not provide compensation for the actual harm inflicted."   *Id.* (quoting *Harvardsky Prumyslovy Holding, A.S.-V Likvidaci v. Kozeny*, 117 A.D.3d 77, 81 (N.Y. App. Div., 1st Dep't 2014)).   And, Berkley

argues, because New York law distinguishes a penalty from damages by examining whether a reward compensates a harm, it follows that the NYFCA's award is a "penalty" – triggering Exclusion *l*'s preclusion of coverage for claims for "payment of any . . . penalty."  Policy § I.2.*l*.

S&H rejoins by citing New York Court of Appeals precedent holding that the "penalty and damages scheme of the [NYFCA] does not compel a conclusion that the statute is penal."  *People ex rel. Schneiderman v. Sprint Nextel Corp.*, 26 N.Y.3d 98, 114 (2015) (internal quotation marks omitted).

The Court need not belabor its analysis because the New York Court of Appeals has since addressed this issue in *J.P. Morgan Securities. Inc. v. Vigilant Ins. Co.*, 2021 WL 5492781 (N.Y. Nov. 23, 2021).  Reviewing its precedent, the court observed it had already determined that "where a sanction has both compensatory and punitive components, it should not be characterized as punitive in the context of interpreting insurance policies."  *Id.* (citing *Zurich Ins. Co. v. Shearson Lehman Hutton*, 84 N.Y.2d 309, 312–13 (N.Y. 1994)).  It continued by noting New York law had "consistently" construed the term "penalty" as "non-compensatory, purely punitive monetary sanctions."  *Id.* at *4–5.  Because a "disgorgement" payment to the SEC served, "at least in part," a compensatory purpose, a reasonable insured "at the time of contracting"—there, in 2000—would have understood that such a payment was not a "penalty" under its insurance contract.  *Id.* at *6.

Here, the NYFCA's "penalty scheme may be rationally connected to the nonpunitive purposes of allowing the government to be made whole."  *Sprint Nextel*,

26 N.Y.3d at 114.  Specifically, the NYFCA's treble damages award reflects, at least in part, "compensatory, nonpunitive aims" – meaning its penalty scheme is not purely punitive.  *Id.*; *see Borden v. 400 E. 55th St. Assocs., L.P.,* 24 N.Y.3d 382, 397 (N.Y. 2014) (recognizing the first third of a treble damages award "is a compensatory form of relief").  Because S&H and Berkley's Policy post-dates that in *J.P. Morgan Securities*, a reasonable insured would have understood at the time of contracting that Exclusion *l*'s use of "penalty" did not encompass an NYFCA award.  *See* 2021 WL 5492781, at *4.

Exclusion *l* therefore does not apply.

### b.      Exclusions j.(1) and j.(3)

Exclusion j.(1) and j.(3) drop coverage for knowingly wrongful, fraudulent, or dishonest acts.  Berkley contends the *Merns* Complaint "alleges nothing but" such acts and quotes several allegations that expressly use fraud-related terminology.  Berkley SJ Opp. at 14–16 (citing *Merns* Compl. ¶¶ 4, 50–52, 155–75).  S&H does not deny that the *Merns* Complaint "alleges[] the law firm, Schanker and Hochberg, P.C. (and Steven Schanker, Esq. and H. Mark Hochberg, Esq.)" engaged in "some of the schemes to defraud."  S&H SJ Opening at 9 (emphasis removed) (quoting *Merns* Compl. ¶ 4).  The Court need not determine whether either subsection applies to exclude coverage for the *Merns* Complaint because, even if one or both did, Exclusion j's safe harbor provision reinstates Berkley's duty to defend.

Under the safe harbor provision, Berkley must "defend such allegations . . . if it involves a 'claim' otherwise covered under this Policy until final adjudication."  Berkley reads this to revive coverage only where a complaint also pleads a cause of

action other than one premised on "fraudulent or dishonest conduct, such as a claim for negligence." Berkley SJ Opp. at 21. "Without the phrase 'otherwise covered,'" Berkley says, Exclusion j "would bar a duty to defend a multi-count suit alleging covered negligence and non-covered fraud." *Id.* This reasoning does not dovetail with the tenets of New York insurance law. "If any of the claims against an insured arguably arise from covered events, the insurer is required to defend the entire action." *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 443 (N.Y. 2002) (quoting *Frontier Insulation Contrs. v Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (N.Y. 1997)). A multi-count suit bringing covered negligence claims alongside non-covered fraud claims would impose a defense duty on Berkley regardless of Exclusion j's applicability.

To S&H, Berkley must "defend claims based on 'such allegations'" because they are "otherwise covered": they "arise out of covered 'legal services' [and] they seek 'damages' covered by the Policy." S&H SJ Opening at 14–20, 16 n.5 (internal citations omitted); S&H SJ Reply at 6–9 [DE 15-20]. The Court agrees that the NYFCA claims are "otherwise covered." The term "otherwise" here means "except for what has just been mentioned." *Otherwise*, Black's Law Dictionary (11th ed. 2019); *see Otherwise*, Oxford English Dictionary (3d ed. 2004) ("in other circumstances; if not; else"). Applied here: if, except for Exclusion j, a claim is covered, Berkley must defend S&H. By consequence, were another exclusion besides Exclusion j applicable, the claim would not be "otherwise covered," and S&H would lose the benefit of the safe harbor. As above, coverage exists in the first instance, Exclusion *l* does not apply, and no

other exclusion is brought to the Court's attention.  The safe harbor is available to S&H.

The safe harbor does not reinstate coverage in its entirety.  The Policy's usage of coverage embraces a duty to "pay" and "defend" claims.  Policy § I.1.  The safe harbor's plain terms resurrect solely Berkley's defense duty.  *Id.* § I.2.j ("[W]e shall defend such allegations . . . .").  Berkley must defend the claim "until final adjudication."  Should S&H be found liable, however, Berkley has no duty to indemnify S&H.

In line with its interpretation of the *Merns* Complaint and the Policy, the Court will grant partial summary judgment to S&H on a portion of its duty to defend claim – namely, that the *Merns* Complaint triggers Berkley's defense duty under the Policy's plain terms.

### E.    Scope of the Court's Decision

Rule 56(a) entitles a party to move for, and a court to grant, partial summary judgment on a "claim or defense – or [a] *part* of each claim or defense."  Fed. R. Civ. P. 56(a) (emphasis added); *see id.* advisory committee's note to 2010 Amendment ("Partial summary judgment" subdivision caption "describe[s] disposition of less than the whole action," "mak[ing] clear" that "summary judgment may be requested not only as to an entire case but also as to a claim, defense, *or part of a claim or defense.*" (emphasis added)); *Hamblin v. Brit. Airways PLC*, 717 F. Supp. 2d 303, 306–09 (E.D.N.Y. 2010); *see Servicios Especiales Al Comercio Exterior v. Johnson Controls, Inc.*, 791 F. Supp. 2d 626 (E.D. Wis. 2011).  "A district court may grant partial

summary judgment 'to streamline the litigation process by narrowing the triable issues.'" *Cangemi v. United States*, 2017 WL 1274060, at *12 (E.D.N.Y. Mar. 31, 2017) (quoting *D'Iorio v. Winebow, Inc.*, 68 F. Supp. 3d 334, 356 (E.D.N.Y. 2014)).

The question on summary judgment required the Court to interpret unambiguous policy language – a task addressing a "pure question of law." *Chachkes v. David*, 2021 WL 101130, at *5 (S.D.N.Y. Jan. 12, 2021); *see Burlington Ins. Co.*, 29 N.Y.3d at 321 ("[T]he interpretation of [unambiguous provisions of an insurance contract] is a question of law for the court."); *Allianz Ins. Co. v. Lerner*, 416 F.3d 109, 115 (2d Cir. 2005) ("Under New York law, the interpretation of an insurance policy generally presents a question of law."). "[W]here, as here 'the issue to be decided is limited to a pure question of law, such as the interpretation of unambiguous contract language, summary judgment may be appropriate'" before discovery is taken. *Chachkes*, 2021 WL 101130, at *5 (quoting *MCC Non Ferrous Trading Inc. v. AGCS Marine Ins. Co.*, 2015 WL 3651537, at *3 (S.D.N.Y. June 8, 2015)); *see Weaver v. Axis Surplus Ins. Co.*, 639 Fed. App'x 764 (2d Cir. 2016) (affirming "a pre-discovery award of summary judgment" because "the interpretation of an insurance contract, a question of law," established that the insurance "[p]olicy excluded coverage for defense of the [underlying] action").

"It is well-settled that 'save where extrinsic evidence is relevant, the comparison of a complaint (allegedly triggering a duty to defend) with an insurance policy is ordinarily treated as a matter of law.'" *David Lerner Assocs., Inc. v. Philadelphia Indem. Ins. Co.*, 934 F. Supp. 2d 533, 545 (E.D.N.Y.) (Bianco, J.), *aff'd*,

542 Fed. App'x 89 (2d Cir. 2013). The *David Lerner Associates* Court, for example, granted an insurer's Rule 12(b)(6) motion because the unambiguous policy language eliminated the insurer's defense duty notwithstanding the lost chance to take discovery into the applicability of exclusions. *Id.* at 545–46. No discovery would clarify "what the underlying complaints make apparent" nor change "the common understanding and meaning" of policy terms. *Id.*

The same is true here. Discovery would not inform the Court's reading of the *Merns* Complaint (which is not vague or conclusory) or the Policy (which is unambiguous). The Court's decision on partial summary judgment extends only so far as this question of law: whether the Policy's plain terms require Berkley to defend S&H in the *Merns* Action.

But the Court's determination that it does, *see supra*, adjudicates only a part of the duty to defend claim, *see* Fed. R. Civ. P. 56(a). It is not dispositive; Berkley may yet have no defense duty. Berkley proposes affirmative defenses to be fleshed out in fact discovery—*e.g.*, in particular, S&H's satisfaction of policy conditions and prior knowledge"—that, if applicable, would nullify Berkley's obligation despite the Policy's plain terms. *See* Berkley SJ Opp. at 4 & n.1. Accordingly, the answer to the question of whether Berkley must defend S&H is deferred until Berkley has had an opportunity to conduct discovery into these defenses and to brief their merits. *See* Fed. R. Civ. P. 56(d) ("If a nonmovant . . . cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time

to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.").

## CONCLUSION

For the reasons discussed above, Berkley's motion to dismiss is granted in part and denied in part. S&H's fourth cause of action arising from the breach of the covenant of good faith and fair dealing survives, but it may not recover consequential damages on its third cause of action for breach of contract.

The Court grants in part and defers adjudicating in part S&H's summary judgment motion. The Policy's plain terms require Berkley to defend S&H in the *Merns* Action. Before the Court orders Berkley to do so, Berkley shall have an opportunity to take discovery into affirmative defenses that depend on facts beyond the meaning of the Policy's plain terms – *i.e.*, S&H's "satisfaction of policy conditions and prior knowledge."

Berkley shall answer the complaint within thirty (30) days of this Order.

**SO ORDERED.**

Dated: Central Islip, New York          s/ Denis R. Hurley
      March 4, 2022                   Denis R. Hurley
                                   United States District Judge